May **WILLIAMS**, and Earl P. Hill and the Colorado National Bank of Denver, as Co-Conservators of the Estate of the said May Williams, a mental incompetent, Plaintiffs,

v.

**UNITED STATES of America,**
**Defendant.**

**Civ. A. No. 7457.**

United States District Court
D. Colorado.

Dec. 6, 1962.

Cole & Maley, John T. Maley, Denver, Colo., for plaintiffs.

Lawrence M. Henry, U. S. Atty. for the District of Colorado, Denver, Colo., and Burton A. Schwalb, Tax Division, Dept. of Justice, Washington, D. C., for defendant.

CHILSON, District Judge.

This is an action for refund of Federal income taxes paid.

The matter came on for trial before the Court on the 28th day of November, 1962. The Court heard the evidence and argument of counsel and took the matter under advisement.

The taxpayer May Williams is a mental incompetent and appears here as a plaintiff together with her duly appointed conservators. We will refer to the plaintiffs as "plaintiff" or as "taxpayer".

During the years 1952, 1954, 1955, and 1956, the taxpayer May Williams sold certain real estate at a profit, which she reported for income tax purposes as gains from the sales of capital assets.

The Commissioner treated the profits as ordinary income and assessed a deficiency tax, which was paid by the plaintiff. The plaintiff filed a claim for refund, which was denied, and by this action plaintiff seeks recovery of the deficiency or a portion thereof.

So far as here pertinent, Section 1221 of the Internal Revenue Code of 1954 defines a capital asset as follows:

" * * * the term 'capital asset' means property held by the taxpayer (whether or not connected with his trade or business), but does not include—

(1) * * * property held by the taxpayer primarily for sale to customers in the ordinary course of his trade or business".

The plaintiff admits that properties acquired by her subsequent to September, 1953 were acquired and held primarily for resale and are not capital assets within the meaning of Section 1221.

However, the plaintiff contends that the properties acquired prior to September, 1953, were not held by her primarily for resale, but were acquired and held primarily for the production of rental income, and that the purchases and sales of real estate prior to September, 1953, were in pursuance of that primary objective, namely, the acquisition of real estate for the production of rental income. Plaintiff further contends that in September, 1953, the plaintiff decided to sell her real estate holdings because of the infirmities of old age and her consequent inability to manage and care for rental property, and that the sales of the property she owned at that time were sales of capital assets and taxable as such.

The defendant contends first, that all properties acquired by the plaintiff were acquired and held primarily for sale to customers in the ordinary course of the plaintiff's trade or business, and therefore are not capital assets, and secondly, that even though the properties while held by the plaintiff were capital assets, when the plaintiff undertook to sell them, they were then held primarily for sale and were no longer capital assets.

Consequently, we have two principal questions to be determined:

1. Were the properties acquired prior to September, 1953, or any part thereof held by the taxpayer primarily for sale to customers in the ordinary course of her trade or business, or were they held by the taxpayer primarily for the production of rental income?

2. If it is determined that any of the properties were held primarily for the production of rental income, we then have this question: Did the taxpayer's decision to liquidate her investment by a sale of those properties or by the method and means employed by her to effect the sales thereby convert the properties from capital assets to noncapital assets?

There is little, if any, conflict in the evidence, which consists principally of the testimony of two real estate agents and an internal revenue agent and a number of exhibits disclosing the nature and extent of the plaintiff's real estate operations since 1947.

The testimony discloses that in 1924 the plaintiff, a widow, began to buy, rent and sell real estate. The extent and nature of her operations prior to 1947 are not disclosed by the evidence.

The witness Paxton, a real estate broker, became acquainted with the plaintiff in 1948. At that time the plaintiff owned some residential rental properties and was interested in acquiring more. Her purchases consisted principally of cheaper run-down single residential properties, which she would convert into multiple rental units, doing much of the remodeling and repair work herself. She provided furniture for some of the units and rented them as furnished units. She also rented a portion of her own home.

As time went on, plaintiff, due to her age (she was then past 70 years of age), became less able to do work herself, became forgetful and was having difficulty in managing her property. Paxton advised her to sell her holdings and carry the paper herself, and she would thereby have as much income from the mortgages as she would from the rentals, and that thereafter she should confine her purchases to "bargains".

The stipulated testimony of the witness Doug Barnes, also a real estate broker, discloses that he knew the plaintiff; that in 1950 she owned a number of rental income producing properties; in September, 1953, plaintiff told Barnes she was in trouble; that she couldn't take care of her properties, and asked his advice. He advised her that because of her age and physical condition she should sell her holdings. She listed some of the properties for sale with Barnes and Barnes sold them. Barnes' testimony also is that thereafter she bought some other properties and Barnes inferred that she was buying them primarily for resale.

This testimony indicates that until 1953 the plaintiff was acquiring and holding real estate primarily for the production of rental income; that about that time she decided to liquidate these hold-

ings, and to thereafter acquire real estate primarily for the purpose of resale.

Does the documentary evidence corroborate the oral testimony?

The defendant contends that the documentary evidence shows that all of the real estate was held by the plaintiff primarily for sale to customers and points to the following:

1. From 1947 to 1957 the plaintiff's total real estate sales were in excess of $500,000. (Exhibit G).

2. That the profits on these sales were in excess of $135,000. (Exhibit G).

3. That for the period 1949 to 1950, she operated the properties at a net loss while during the same period her profits from sales were quite large. (Exhibits H and G).

4. That from 1952 to 1956 the plaintiff had on hand and acquired a total of 31 properties and sold 27 of them. (Exhibit K).

These facts the government urges show the plaintiff acquired and held the properties primarily for resale.

However, when the documentary evidence is analyzed more closely the following facts appear:

1. Until the year 1953, the number of properties held increased from six in number in 1948 to fourteen in number in 1952. (Exhibits J and G). (See table below). This is more compatible with an intent to acquire property primarily for investment than with an intent to acquire property primarily for resale.

## NUMBER OF PROPERTIES HELD AT END OF EACH YEAR

| Year | Number |
|------|--------|
| 1946 | 8 |
| 1947 | 9 |
| 1948 | 6 |
| 1949 | 7 |
| 1950 | 10 |
| 1951 | 12 |
| 1952 | 14 |
| 1953 | 10 |
| 1954 | 7 |
| 1955 | 3 |
| 1956 | 4 |

2. Generally the properties acquired prior to 1953 were held for several years, indicating that the plaintiff was not engaged in the business of holding property primarily for sale to customers. On the other hand, properties acquired by the plaintiff in 1953 and thereafter were held for relatively short periods of time, in most instances less than a year, indicating that the properties acquired in 1953 and thereafter were acquired primarily for resale. (See Exhibits G and L).

3. For the years 1947 to 1952, inclusive, the purchases of properties by the plaintiff, both in number and amount of purchase price, substantially exceeded sales in both categories. This corroborates the oral testimony that until 1953 the plaintiff was engaged primarily in accumulating and holding real estate for investment rather than for sale. (See Exhibits J and G). (See table below).

## PURCHASES AND SALES BY YEARS
### (FIGURES APPROXIMATE)

| Year | Purchases | | Sales | |
|------|-----------|----------------|-----|-------------|
| | No. | Purchase Price | No. | Sales Price |
| 1947 | 2 | Unknown | 1 | Unknown |
| 1948 | 0 | –0– | 3 | Unknown |
| 1949 | 5 | Unknown | 4 | Unkown |
| 1950 | 4 | 29,370.00 | 2 | 21,500.00 |
| 1951 | 3 | 28,450.00 | 1 | 8,000.00 |
| 1952 | 4 | 54,730.00 | 2 | 21,750.00 |
| 1953 | 3 | 31,150.00 | 7 | 111,900.00 |
| 1954 | 5 | 36,500.00 | 8 | 113,500.00 |
| 1955 | 3 | 32,700.00 | 8 | 97,900.00 |
| 1956 | 3 | 26,700.00 | 2 | 34,200.00 |

4. In the four year period from 1949 to 1952, inclusive, the plaintiff's principal gross income was from rentals, and while the net income from rentals was relatively small, so also were the profits from sales of real estate. This also corroborates the oral testimony that until 1953 the plaintiff was engaged primarily in holding property for the production of rental income rather than for sale. (Exhibits H and G). (See table below).

## RENTAL INCOME
### ( ) INDICATES LOSS

| Year | Gross | Net Before Depreciation | Net After Depreciation | Net From Sales |
|------|-------|------------------------|-----------------------|----------------|
| 1949 | 5,573.00 | (1,446.72) | (1,446.72) | Unknown |
| 1950 | 9,183.00 | (120.16) | (652.92) | Unknown |
| 1951 | 12,511.00 | 2,758.20 | 2,103.46 | 1,151.25 |
| 1952 | 24,650.00 | 4,865.15 | (663.68) | 6,929.88 |
| 1953 | 22,813.66 | 4,281.63 | 1,640.71 | 26,433.30 |
| 1954 | 9,350.00 | (5,363.99) | (7,649.66) | 45,963.60 |
| 1955 | 8,500.00 | (5,028.61) | (7,037.10) | 23,141.19 |
| 1956 | 3,600.00 | (5,762.21) | (6,619.80) | 7,310.12 |

5. That plaintiff, in 1953, embarked upon a program of liquidation of her rental income property is evidenced by the fact that of the fourteen properties owned by the plaintiff at the beginning of 1953, one is her home in which she lives, and of the remaining thirteen, six were sold in 1953, six in 1954, and one in 1955.

## FINDINGS OF FACT

From a review of all the evidence the Court finds that the properties acquired by the plaintiff prior to the year 1953 were acquired and held by the plaintiff primarily for the purpose of the production of rental income and they were not held by the plaintiff primarily for sale to customers.

The Court further finds that all properties acquired by the plaintiff in the year 1953 and subsequent thereto were acquired and held by the plaintiff primarily for resale to customers.

The Court further finds that the plaintiff, in the year 1953, because of the infirmities of old age and her consequent inability to manage the properties, decided to liquidate the properties which she then held primarily for the production of rental income. To accomplish this the plaintiff listed the properties with a real estate broker for sale. She paid the usual and customary real estate broker's commission, and the sales were made in the ordinary and usual manner in which sales of real estate are made by those who do not themselves engage in the business of selling real estate. The plaintiff was not a real estate broker and there is no evidence of any activity or efforts on the part of the plaintiff to find buyers or to effect sales other than the listing of the properties with a licensed real estate broker.

## CONCLUSIONS OF LAW

The Court concludes as a matter of law that the properties acquired by the plaintiff prior to the year 1953 were capital assets within the meaning of Section 1221 of the 1954 Internal Revenue Code.

The Court further concludes as a matter of law that under the facts as found by the Court, the liquidation of these capital assets by sale did not change the character of the properties from capital assets to noncapital assets; that the profits derived from the sale thereof were profits derived from the sale of

capital assets, and were and are taxable as profits from the sale of capital assets and not as ordinary income.

At the conclusion of the trial counsel indicated that upon the Court's findings of fact and conclusions of law they could agree on a computation of the amount of the judgment to be entered if the findings were in favor of the plaintiff.

It is therefore ordered that counsel shall prepare and submit to the Court on or before December 18, 1962, the judgment to be entered by the Court, or, if counsel are unable to agree upon the judgment to be entered, that counsel appear before the Court at 9:00 A.M. on Wednesday, December 19, 1962, for further proceedings to determine the judgment to be entered herein.

It is further ordered that for the purposes of review, judgment shall be entered and take effect as of the date the Court enters the written order for judgment.